**Michael Lloyd CLEMENTS**

v.

**CHOTIN TRANSPORTATION, INC.**

**Civ. A. No. 79–57–B.**

United States District Court,
M. D. Louisiana.

Aug. 13, 1980.

Roy Maughan, Baton Rouge, La., for plaintiff.

Michael A. McGlone, Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, La., for defendant.

POLOZOLA, District Judge:

This suit was filed by the plaintiff, Michael Lloyd Clements, under the Jones Act, 46 U.S.C. § 688, and the General Maritime Law for damages sustained as a result of two accidents which occurred on the M/V

Scott Chotin. Named as a defendant is Chotin Transportation, Inc., the owner and operator of the vessel.

Jurisdiction is conferred upon the Court pursuant to 28 U.S.C. § 1333. Venue in this district is proper.

Plaintiff is a seaman and was employed on the M/V Scott Chotin as head deckhand and tankerman. He contends that he injured his back on November 3, 1978 while attempting to pull a line through a circular metal object known as a thimble. After remaining on light duty for three days, plaintiff contends he again injured his back on November 6, 1978 when he attempted to close a frozen valve on the vessel. It is plaintiff's contention that the defendant was negligent and that the vessel was unseaworthy.

The defendant denies that it was negligent. Defendant further contends that the vessel was seaworthy. Finally, the defendant claims that if the plaintiff was in fact injured in either or both of the accidents, the plaintiff caused each or both of the accidents and therefore, is not entitled to recover damages from the defendant.

Plaintiff was employed on the vessel as head deckhand and tankerman. He was responsible for all on- and off- loading operations. On November 3, 1978 while the M/V Scott Chotin was enroute from Plaquemine, Louisiana to Tuxpan, Mexico with a barge-load of caustic soda in tow, the plaintiff was assigned to splice a hawser line through a thimble.

The plaintiff testified that because the eyelets were "too small" for the line, he had to force the line through the eyelets by pulling on the line while another crew member pounded on the hawser with a rubber mallet. While pulling on the line from a sitting position, the plaintiff stated that he strained his back. After reporting the accident, plaintiff was assigned to light duty for the remainder of the voyage. The plaintiff claims that the condition of the two eyelets of the thimble was caused by the negligence of the defendant and also rendered the vessel unseaworthy.

On November 6, 1978, the vessel arrived in Tuxpan and the plaintiff began to perform his duties as a tankerman. Plaintiff attempted to close the main ballast discharge valve which had been left open during the voyage and was in a frozen position. As plaintiff used a cheater bar to close the valve, the metal valve stem broke causing the plaintiff to fall against a steel beam. Plaintiff contends this frozen valve was caused by defendant's negligence and rendered the vessel unseaworthy.

The plaintiff has alleged that the defendant was negligent under the Jones Act, 46 U.S.C. § 688, because the defendant breached its duty to provide a safe vessel. Under the Jones Act, if an employer's negligence plays any part whatsoever in producing the injury, the employer is considered negligent under the Act. *Spinks v. Chevron Oil Co.*, 507 F.2d 216 (5 Cir. 1975), clarified, 546 F.2d 675 (1977); *Sanford Bros. Boats, Inc. v. Vidrine*, 412 F.2d 958 (5 Cir. 1969).

Negligence is the failure to exercise the degree of care which an ordinary prudent person would use under the circumstances in discharging the duty that he owes to those who work on a vessel. The shipowner has a continuing duty to provide a reasonably safe place to work and to use ordinary care to maintain the vessel in a reasonably safe condition. In the present case, the plaintiff contends that the defendant was negligent in two instances. First, in equipping the vessel with a thimble that had eyelets which were "too small" for the hawser line to be properly threaded; and, secondly, in allowing the ballast valve to remain frozen. In order to prevail on these claims, the plaintiff must demonstrate that the defendant knew or should have known of the alleged unsafe and negligent conditions on the vessel. The evidence reveals that the defendant had no knowledge of either condition. There is absolutely no evidence in the record of any previous trouble with the thimble holes. The valve involved in the second incident had been serviced regularly—as were all valves—and had not been considered defective or haz-

ardous. In fact, since it was the plaintiff's duty to service the valve, his failure to properly maintain the valve cannot be the basis for a finding of negligence against the shipowner.

 The mere fact that an injury occurred does not give rise to a Jones Act claim. Evidence must be presented which indicates negligence on the part of the shipowner or his employees to justify the award. See *Marvin v. Central Gulf Lines, Inc.*, 554 F.2d 1295 (5 Cir. 1977) reh denied, 559 F.2d 29, cert. denied, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); *Kent v. Shell Oil Co.*, 286 F.2d 746 (5 Cir. 1961). The plaintiff has failed to prove that the defendant was negligent in either of the two accidents about which plaintiff complained. Thus, plaintiff has failed to show that he is entitled to recover under the Jones Act from the defendant for the accidents of November 3, 1978 and November 6, 1978.

The plaintiff also asserts a claim under the General Maritime Law. Plaintiff contends the vessel was unseaworthy because of the small eyelets on the thimble holes and because of the frozen valve.

 The law is well settled that a shipowner has an absolute duty to provide a seaworthy vessel. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960) has established the following basic concept:

"[T]he owner is [not] obligated to furnish an accident-free ship. The duty is absolute, but it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service."
*Mitchell* at 362 U.S. 550, 80 S.Ct. 933.

The vessel need not be accident proof. Thus, in *Massey v. Williams-McWilliams, Inc.*, 414 F.2d 675, 678 (5 Cir. 1969), cert. denied, 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681, on remand 317 F.Supp. 37; the

Fifth Circuit held that "there are inevitable hazards—some of a very severe nature—in the calling of those who go to the sea in ships, hazards which when not occasioned by negligence or unseaworthiness have to be borne by those who follow the calling." However, when equipment is not reasonably fit for its intended use, an unseaworthy condition arises. When equipment fails while being put to its intended use, it is a reasonable inference that the equipment was not reasonably fit for its intended use. *Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944); *Benedict on Admiralty*, Vol. 1B, § 23, p. 3–31 (1976).

 In the present case, it is obvious to the Court that the mere presence of eyelets that were "too small" on one of seven thimbles on board does not create an unseaworthy condition. The thimble was subsequently threaded and did not, in any way, render the vessel unfit or unsafe for its intended purpose.

 The Court does find that the frozen valve did render the vessel unseaworthy. Several cases presenting similar factual situations support the Court's conclusion. In *The H.A. Scandrett*, 87 F.2d 708 (2 Cir. 1937), the Court awarded damages to a seaman who returned to his quarters from his watch and confronted a stuck door. After turning, pulling and tugging, the seaman finally pulled the knob off the door, fell backwards and was injured. The Court also noted that:

". . . [T]here is an absolute obligation to provide a seaworthy vessel and, in default thereof, liability follows for any injuries caused by breach of the obligation. Nor does this seem an unduly harsh imposition. A ship is an instrumentality full of internal hazards aggravated, if not created, by the uses to which she is put. It seems to us that everything is to be said for holding her absolutely liable to her crew for injuries arising from defects in her hull and equipment." 87 F.2d at 711.

In *Solet v. M/V Capt. H.V. Dufrene*, 303 F.Supp. 980 (E.D.La.1969), a ship was held unseaworthy when the welding on the cross

arm of a winch broke while shrimp was being hauled on board. The welding had never failed before, but the sole test applied by the Court was a determination of the vessel's "reasonable fitness for the intended purpose." *Solet*, 303 F.Supp. at 983.

In *Domeracki v. Humble Oil & Refining Co.*, 443 F.2d 1245 (3 Cir. 1971) cert. denied, 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165, a jury determined that a vessel was unseaworthy because one of two removable chains which guarded an opening in the ship's rail was rusted and frozen. The plaintiff had injured his back while attempting to negotiate a large crate through the opening. The Third Circuit affirmed the unseaworthiness determination.

Turning to the facts of this case, it is clear that Clements was injured when the valve failed while being put to its intended use. The purpose of the valve was to regulate the ballast, but the frozen condition necessitated the excessive physical exertion which resulted in the plaintiff's injuries. The facts in this case are of great significance. The plaintiff was the tankerman on the ship. As such, it was his duty to open and close various valves on board the ship. It was also his responsibility to supervise the on- and off- loading activities when the ship was docked. When the ship reached Tuxpan, the plaintiff began to assume these duties. He noticed that the main ballast discharge valve was frozen open. The parties agree that it is the tankerman's duty to close all valves, but there was some confusion as to whether the plaintiff or his predecessor was responsible for closing this particular valve prior to leaving the Dow dock in Plaquemine at the beginning of the voyage. The plaintiff testified that the valve should have been closed by the tankerman who departed the ship in Plaquemine. He also stated that he checked several other valves when he boarded the ship, but that he did not check this particular valve. The plaintiff also testified that he had serviced this particular valve before, but that he did not seek assistance in attempting to close the obviously-stuck valve because he felt that he could do it himself. The plaintiff struggled with the valve for three or four minutes before the stem finally broke, thereby causing the injuries about which he now complains. Testimony at trial also revealed that the tankerman has authority over the captain during loading and unloading procedures. Based on the foregoing facts, it is apparent that the plaintiff's injuries were in large part caused by his own negligent actions. Plaintiff's failure to inspect the valve and his refusal to seek assistance contributed to his resulting injuries. Clements was totally familiar with the valves and knew how to operate the valves in a safe manner. The size and tightness of the valve and its refusal to yield to plaintiff's initial efforts were sure signs that plaintiff should have sought assistance to close the valve. Plaintiff simply did not act with reasonable prudence under the facts of this case, particularly when the Court considers that plaintiff was in full charge of the operation. Thus, the Court finds that plaintiff was contributorily negligent.

■ Because the shipowner has an absolute duty to provide a seaworthy vessel, *The Osceola*, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903); *Mitchell v. Trawler Racer, Inc.*, supra, the doctrine of contributory negligence cannot operate to bar plaintiff's recovery. However, the plaintiff's contributory negligence can reduce the amount of damages plaintiff is entitled to recover. Thus, whenever contributory negligence is applicable, the doctrine of comparative negligence is applied and plaintiff's damages are mitigated to the extent to which he is negligent. *Socony-Vacuum Oil Co. v. Smith*, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939); *Hlodan v. Ohio Barge Line, Inc.*, 611 F.2d 71 (5 Cir. 1980). Applying these standards and considering the facts of this case, the Court concludes that plaintiff's own contributory negligence contributed to seventy percent (70%) of the accident and, therefore, his damage award should be reduced by seventy percent (70%). The Court has considered and finds inapplicable and distinguishable the case of *American President Lines, Ltd. v. Redfern*, 345 F.2d 629 (9 Cir. 1965).

The final issue the Court must decide is the amount of damages plaintiff is entitled to recover. After the November 6, 1978 accident, the vessel proceeded to Houston, Texas. Plaintiff was then flown from Houston to Baton Rouge where he was admitted to Our Lady of the Lake Medical Center. Clements remained in the hospital from November 10, 1978 to November 18, 1978. On one occasion, plaintiff left the hospital without obtaining permission from his doctor or the hospital staff.

During the hospital confinement, the plaintiff was placed in traction, received therapy and underwent x-rays which revealed a congenital lower back defect known as spondylolysis at the L-5 level. The plaintiff was subsequently examined by several doctors. While hospitalized, Clements was initially treated by Drs. Thomas Flynn, a neurosurgeon, and Sam Levert, a neurologist, who discovered the spondylolysis and diagnosed the plaintiff's condition as "low back pain etiology undetermined." After being discharged, the plaintiff made seventeen visits to Dr. C. R. Chesnutt. After two weeks of treatment, Dr. Chesnutt indicated that the plaintiff was capable of performing a limited duty job. The final visit to Dr. Chesnutt was on January 9, 1979. The patient was thereafter referred to Dr. William Fisher, a neurosurgeon, whose initial examination on March 19, 1979 revealed a herniated disc at the L-4, L-5 level. In his deposition, Dr. Fisher indicated that the plaintiff could probably work in jobs that did not require repeated lifting, climbing, stooping or bending. Dr. Fisher also indicated that the congenitive abnormality was the basis of Clement's problem and that the second accident on board the vessel was probably an aggravation of the first.

While being treated by Dr. Fisher, the patient was also examined by an orthopedist, Dr. Thomas J. Kilroy, who concluded that a back fusion for the spondylolysis was not necessary. The plaintiff was then seen by another neurologist, Dr. R. C. Llewellyn, whose October 4, 1979 examination confirmed the ruptured disc at the L-4, L-5 level. In his deposition, Dr. Llewellyn testified that the chance of the plaintiff benefiting from surgery was 80 percent and that a person of his age, if the operation was successful, could return to his regular job assignment and have no functional disability. The doctor also noted that the pre-existing spondylolysis could result in some instability following surgery.

It is very difficult to determine from the evidence presented which of the two accidents caused the herniated disc. Even the plaintiff is uncertain which of the two accidents caused the disc injury. Thus, in proposed findings of fact number 30, the plaintiff states that "the ruptured disc in plaintiff's back is a result of injuries sustained on November 3, 1978, and/or November 6, 1978, the latter date being the incident which most likely caused the ruptured disc." As in any other civil case, the plaintiff in this case bears the burden of proving his case, including his damage claim, by a preponderance of the evidence. Speculation, possibilities and conjecture are not sufficient. Based on the facts presented in this case, the Court finds that plaintiff has failed to prove which accident caused the disc injury. However, the Court further concludes that plaintiff is entitled to recover damages for pain and suffering, and for the disability caused by the second accident. After reviewing the medical evidence, the Court finds that an award of $40,000.00 for past and future pain and suffering, disability and aggravation of a pre-existing condition is fair and just under the facts presented.

Plaintiff is now enrolled in college and should get his degree in approximately two years. He has not returned to work for the defendant since the second accident. The Court also finds that plaintiff is entitled to recover wages he lost as a result of the second accident. Plaintiff contends the award for lost wages should be based on a 24 day per month schedule, while the defendant contends that wages should be computed on the basis of 30 days on and 15 days off. In addition to his regular wages, plaintiff contends he is also entitled to tankerman wages. It is clear that in 1978,

plaintiff earned $11,521 while mainly working a 30 day on, fifteen day off schedule. It is pure speculation that plaintiff's work schedule in the future would have been any different. The Court recognizes that plaintiff was working an accelerated work schedule of 24 days per month immediately prior to the accident. An award of three months salary based on the 24 day per month work cycle is justifiable under the facts of this case. After carefully considering all of the facts of this case and considering the daily pay rate of $48.60 per day through July, 1979, and $53.32 per day thereafter, the Court finds that plaintiff is entitled to receive loss wages in the sum of $12,495. This figure was computed by awarding plaintiff three months pay at the rate of $48.60 for a 24 day work month. The Court thereafter computed the wages on the basis of a 30 day on, 15 day off scale at the applicable daily rates until December of 1979. The Court also awards plaintiff the sum of $2,000 for tankerman fees. The evidence presented on the loss of future income after December of 1979 is purely speculative and the Court hereby denies plaintiff's claim for loss of future wages after that date. Thus, in summary, the Court finds that plaintiff is entitled to recover the sum of $54,495.00 subject to a reduction of seventy percent (70%). Therefore, plaintiff is entitled to a judgment in the sum of $16,348.50 against Chotin Transportation, Inc., together with interest from the date of judgment until paid and all costs of this proceeding.

Judgment shall be entered accordingly.