CHARLES R. JONES, Judge.
| ¡The Appellant, Delta Steamboat Company (hereinafter referred to as Delta), appeals a judgment in favor of the Appel-lee, Anthony Todd. We affirm in part, reverse in part and remand in part.[1]
Mr. Todd was an employee of the Delta Steamboat Company, which was the owner/operator/manager of the vessel the America Queen. Mr. Todd was employed as a relief executive chief on the America Queen. While working in the galley of the vessel, on or about January, 2, 2000, Mr. Todd, who was 45 years old at the time, sustained a right knee injury when his knee came in contact with a loaded metal cart that was being handled by his coworker, Henry Fant.
It is disputed between the parties how Mr. Todd’s injury actually occurred. Mr. Todd alleges that he was in the kitchen when he heard Mr. Fant shout that he was “coming through” a constricted kitchen aisle with a loaded metal cart. Mr. Todd then proceeded to clear the pathway by removing a garbage can and a plate cart. Mr. Fant proceeded through the pathway prior to Mr. Todd clearing his path, resulting in Mr. Todd’s knee being struck by the moving metal cart.
^Nevertheless, Delta avers that Mr. Todd hit his knee on the cart while it was stationary. According to Delta, Mr. Fant advised Mr. Todd of his approach with the cart by yelling “coming through” to him. Mr. Todd then removed a garbage can and other items that were in Mr. Fant’s way. After doing so, Mr. Todd turned into the cart, which was stationary, and struck his knee.
As a result of the incident, Mr. Todd’s right knee was fractured. Delta referred him to an orthopedic surgeon, Dr. Patrick Barry.[2] Mr. Todd presented himself for treatment complaining of pain in his light knee, pain behind his right kneecap and numbness in his foot. Dr. Barry testified that Mr. Todd suffered from a preexisting medical condition in both knees called bipartite patella.[3] Dr. Barry further testified *111 that bipartite patella is a congenital condition, yet he opined that Mr. Todd was asymptomatic prior to his accident on the America Queen. Dr. Barry treated Mr. Todd from March 29, 2000 to November 30, 2000.
Mr. Todd filed suit against Delta in November of 2000. In his petition, he raised a Jones Act claim and a general maritime claim. Trial of this matter was held on November 6, 2006. The district court rendered judgment with reasons on May 18, 2007. Upon finding Delta liable solely under the Jones Act, the district court awarded Mr. Todd $120,000.00 in general damages, and $259,171.00 for past lost wages, plus judicial interest and court costs.
Thereafter, Delta filed a motion and application for new trial, and amendment of judgment and hearing. The district court denied the motion for new [3trial and amended its previous judgment to state that judicial interest was awarded on the total damage award of $379,171.00 from the date of demand as permitted by “the Bankruptcy Laws of the United States of America.” Thereafter, Delta timely filed the instant appeal.
On appeal, Delta raises nine (9) assignments of error:
1. the district court erred in finding that Mr. Todd proved that he sustained any loss of his earning capacity;
2. the district court erred in awarding Mr. Todd past lost income;
3. the district court erred in the way it computed the award for past lost income where the district court used Mr. Todd’s gross income in its computation instead of his net income;
4. the district court erred in not crediting Delta for wages paid to Mr. Todd post injury;
5. the district court erred in awarding pre-judgment interest:
6. the district court erred in concluding that Todd’s injury was caused or contributed to by any negligence on the part of Delta;
7. the district court erred in awarding $120,000.00 in general damages;
8. the district court’s award of $120,000.00 in damages was excessive, and
9. the district court erred in not finding Mr. Todd guilty of some percentage of contributory or comparative negligence.
The appellate court standard of review for a factual finding of a trial court is that of manifest error, or the clearly wrong standard. Stiltner v. National Union Fire Ins. Co., 00-2230, pp. 3-4 (La.App. 4 Cir. 10/3/01), 798 So.2d 1132, 1135 (citing Newman v. Fernwood Transportation, 00-1036 (La.App. 4 Cir. 4/25/01), 4785 So.2d 1026; Mistich v. Volkswagen of Germany, Inc., 95-0939 (La.1/29/96), 666 So.2d 1073). However, if a trial court’s findings of fact are not reasonable in light of the record reviewed in its entirety, then a court of appeal may reverse. Id., 00-2230, pp. 3-4, 798 So.2d at 1135 (citing Stobart v. State, Through Dept. of Transp. & Development, 617 So.2d 880 (La.1993)). Legal errors are subject to the de novo standard of review. Evans v. Lungrin, 97-541, p. 7 (La.2/6/98), 708 So.2d 731, 735.
*112 The first assignment of error raised by Delta is that the district court erred in finding that Mr. Todd proved that he sustained any loss of his earning capacity. Delta alleges that the evidence adduced at trial showed that Mr. Todd was making $45,000.00 per year at the time of his injury, and upon being discharged in November of 2000, he was capable of earning the same amount.
Delta further avers that upon being discharged by Dr. Barry, Mr. Todd was scheduled to take a functional capacity evaluation (FCE) to determine his ability to function in the work place, and his endurance in the work place. Delta contends that the results of the FCE show that Mr. Todd was capable of heavy work, and that Dr. Barry’s trial testimony was that Mr. Todd could return to his prior employment.
Mr. Todd argues that in consideration of the standard of review, it cannot be said that district court erred in making its finding of fact. Additionally, Mr. Todd avers that the district court’s factual findings were reasonable. We agree.
“Undfer Louisiana jurisprudential law, wage losses may be established by any proof which reasonably establishes the claim, including the plaintiffs own reasonable testimony.” Daniels v. Burridge, 00-1089, p. 7 (La.App. 4 Cir. 53/21/01), 785 So.2d 906, 911(citations omitted). Additionally, in Daniels, we noted:
As for a claim for past-lost wages, the Third Circuit has provided:
While claims for past lost wages must be established with some degree of certainty, Dupre v. Exxon Pipeline Co., 93-1528 (La.App. 3 Cir. 6/1/94); 638 So.2d 1118, writ denied, 94-2200 (La.11/18/94); 646 So.2d 379, they need not be proven with mathematical certainty, but only by such proof as reasonably establishes the plaintiffs claim. Veazey v. State Farm Mut. Auto Ins., 587 So.2d 5 (La.App. 3 Cir.1991). This award may be supported by the plaintiffs detailed and uncorroborated testimony. Craig v. Burch, 228 So.2d 723 (La.App. 1 Cir.1969), writ denied, 255 La. 475, 231 So.2d 393 (1970).
Dauzat v. Canal Insurance Co., 96-1261 (La.App. 3 Cir. 4/9/97), 692 So.2d 739, 748.

Id.

Furthermore, under the Jones Act, a seaman is able to recover damages for past lost wages, loss of earning capacity or future lost wages, loss of fringe benefits, and medical expenses. Lopinto v. Crescent Marine Towing, 2004 WL 1737901, p. 5 (E.D.La.2004) (citing 46 U.S.C. § 688 et seq.; Levine v. Zapata Protein (USA), Inc., 961 F.Supp. 942, (E.D.La.1996)). The plaintiff bears the burden of proving his damages by a preponderance of the evidence. Id., (citing Clements v. Chotin Transportation, Inc., 496 F.Supp. 163, 168 (M.D.La.1980)). “Speculation, possibilities and conjecture are not sufficient.” Id.
The district court was presented with evidence and testimony that Mr. Todd had a pre-existing knee condition; however, his knee condition was asymptomatic and did not impact his ability to work prior to this accident. After being injured, Mr. Todd participated in physical therapy contemporaneous with Dr. Barry’s | (¡treatment. Dr. Barry treated Mr. Todd with a series of Hylagen injections and performed arthroscopic surgery on Mr. Todd’s right knee. Dr. Barry also testified that prior to Mr. Todd’s discharge, Dr. Barry diagnosed Mr. Todd as having a 15% permanent impairment of his right leg, or a 6% whole body permanent impairment. In November of 2000, Dr. Barry released Mr. Todd from his care and opined that Mr. Todd could not return to *113 his job as a chef, and that he had reached maximum medical improvement. Dr. Barry also scheduled Mr. Todd for a functional capacity evaluation (FCE) upon his discharge.
Despite FCE results showing Mr. Todd was able to work in the heavy category of work, the results also showed that “[m]odi-fications should be made to limit his standing time to a frequent level, and/or alternating between sitting and standing.” Dr. Sherry Carthane, a vocational rehab specialist who assessed Mr. Todd’s physical condition in 2001, opined in her report that Mr. Todd had poor endurance for aerobic capacity for a man of his age, and she disagreed with the FCE results showing that Mr. Todd could perform work of a heavy nature.
Lastly, Mr. Todd earned $45,000.00 a year as a chef working for Delta prior to this accident. He was not hampered in carrying out his duties by his pre-existing knee condition. Yet, Mr. Todd testified that after being discharged from Dr. Barry, he attempted working as a chef, but he was physically unable to carry out his duties. He testified that in 2002, while employed as a chef at the Fountainbléu Hilton, he had to leave that position within a month because his knee began swelling, and he was unable to move around on his leg. He further testified that his condition is painful and his knee frequently swells up, buckles, burns and aches.
17From 2001 to 2005, Mr. Todd has been self-employed as a carpenter/cabinetmaker. He testified that he earned approximately $15,000.00 as a carpenter/cabinetmaker in 2003, about l/3rd of what he earned as a chef. Based upon the record before us and the district court’s determination that Mr. Todd’s injuries were caused by Delta’s negligence, we do not find that the district court erred in finding that Mr. Todd sustained a loss in earning capacity. This assignment of error is without merit.
 Moreover, with regard to Delta’s second assignment of error, that the district court erred in awarding past lost income to Mr. Todd, for the foregoing reasons we also find this assignment of error to be without merit. Appellate review of an award for past wages is limited to a determination of whether the trier of fact abused its much discretion and whether the award may be considered excessive. Burns v. United Gas Pipeline Co., 598 So.2d 397, 402 (La.App. 4 Cir.1992). As discussed above, Mr. Todd demonstrated that he sustained an economic loss as a result of his injuries from the subject incident. Therefore, the district court did not abuse its discretion in awarding past lost wages to Mr. Todd.
The third issue that Delta raises is that the district court erroneously computed Mr. Todd’s past lost income award. Delta avers that the district court should have computed Mr. Todd’s past lost income award using his net income instead of his gross income. Mr. Todd contends that pursuant to Perez v. State, Through DOTD, 578 So.2d 1199 (La.App. 4 Cir.1991) — which is not a maritime case — that gross wages and not net wages are to be used in calculating past and future lost wages.
The district court determined that based upon evidence submitted by Mr. Todd, that his wage loss for the year 2000 was $24,144.00. This award was based |son Mr. Todd’s $45,000.00 salary less the $20,856.00 Delta paid Mr. Todd for the year 2000. The district court added to that sum: $42,883 for 2001; $41,637 for 2002; $40,033 for 2003; $40,558 for 2004; $38,306 for 2005, and $31,610 for 2006. The total award was 259,171.00.
*114 We note that “[i]n a maritime context, an award for lost wages must be based on after-tax earnings.” Harrison v. Diamond Offshore Drilling, Inc., Civ. A. No. 07-4176, 2008 WL 708076, p. 17 (E.D.La.2008). However, in the instant case, it is not clear from the district court’s reasons how it computed Mr. Todd’s past lost wage award.
Considering this lack of clarity and that the calculation for Mr. Todd’s wage loss for the year 2000 was based on his gross income, we remand this issue to the district court to re-calculate it’s award of past lost wages to the extent its previous computation may have been based on Mr. Todd’s gross income, and to provide an explanation of its computation.
Mr. Todd’s fourth assignment of error is that the district court erred in not crediting Delta for wages paid to Mr. Todd after his injury. Delta specifically avers that it executed a stipulation with Mr. Todd that it paid him $4,673.34 in wages after his injury.
The record shows that the parties entered into a stipulation that was filed on November 6, 2006, which provided:
The parties agree to stipulate that between May 20, 2000 to July 21, 2000(,) The Delta Queen Steamboat Company, Inc. paid $4,673.34 in ‘unearned wages’ to Anthony Todd while he was not fit for duty.
The stipulation, however, does not state that the “unearned wages” would be credited toward any damage award for past lost wages against Delta. Additionally, [flthe stipulation was before the district court, which determined not to credit Delta for the “unearned wages.” Because of the district court’s consideration of the stipulation and the lack of specificity in the wording contained therein, we find that the district court did not err in not crediting Delta for its payments of “uneaimed wages” to Mr. Todd post-injury. This assignment of error is without merit.
Delta’s fifth assignment of error is that the district court erred in awarding prejudgment interest when it did not find the vessel to be unseaworthy. Additionally, Delta avers that interest on any judgment against Delta stopped running as of the date it declared Chapter 11 bankruptcy.
The Louisiana Supreme Court in Milstead v. Diamond M. Offshore, Inc., 676 So.2d 89 (La.1996), explained that when a Jones Act case is tried as an admiralty case without a jury, the district court can award pre-judgment interest on past damages, but may not award prejudgment interest on future damages. Id., 95-2446, pp. 15-16, 676 So.2d at 97. In the instant case, the district court awarded prejudgment interest on a past lost wage award. This is permissable under Mil-stead,. Thus, despite the fact that the district court did not find Mr. Todd’s un-seaworthy claim to have merit, it was permissible for the court to award prejudgment interest for Jones’ Act claims tried to the court.
Regarding the district court’s award of prejudgment interest, Delta contends that interest is not recoverable once it filed for Bankruptcy on October 19, 2001. We note that the district court issued an amended judgment on August 24, 2007, stating that its total damages award of $379,171.00 was being awarded with judicial interest “as may be permitted by the Bankruptcy Laws of the United States of America.” We interpret this to mean that to the extent that the bankruptcy laws do not permit an award of prejudgment interest, interest would not then be |10awarded. The application of bankruptcy laws lies within the jurisdiction of the Bankruptcy Courts. Nevertheless, the district court did not err in awarding prejudgment inter *115 est on past wages in a Jones Act case while the court was sitting in admiralty. This assignment of error is without merit.
Delta’s sixth assignment of error addresses the district court’s apportionment of fault between the parties. Delta’s avers that the district court erred in concluding that Mr. Todd’s injury was caused or contributed to any negligence on the part of the Delta Steamboat Company.
In a Jones Act case, the court should determine the negligence of the employer according to the standard of a reasonable employer under like circumstances, and should determine the contributory negligence of the seaman according to the standard of a reasonable seaman under like circumstances. Vendetto v. Sonat Offshore Drilling Co., 97-3103, p. 9 (La.1/20/99), 725 So.2d 474, 479, cert. denied, 527 U.S. 1023, 119 S.Ct. 2369, 144 L.Ed.2d 773 (1999).
As indicated above, the facts in this case were in dispute. Mr. Todd alleged that his knee was struck by a loaded cart after he cleared a passageway for Mr. Fant, a Delta employee. Nevertheless, Delta avers that Mr. Todd hit his knee on the loaded cart when it was stationary.
The district court — as the factfin-der — determined upon review of the evidence and testimony presented at trial that Mr. Todd’s version of events is what actually transpired. “Where there are two permissible views of the evidence, the fact-finder’s choice cannot be manifestly erroneous or clearly wrong.” Stobart v. State, Through Dep’t of Transp. and Dev., 617 So.2d 880, 882 (La.1993). We cannot say that the district court’s determination that Mr. Todd’s knee was struck with the loaded cart that was being pushed by a Delta employee, who prematurely |, ¡proceeded through the kitchen/galley aisle, was manifestly erroneous. Delta is vicariously liable for Mr. Fant’s negligent actions under the doctrine of respondeat superior. See Broussard v. Stolt Offshore, Inc., 467 F.Supp.2d 668, 669 (E.D.La.2006). It follows then that we cannot say the district court erred in determining that Mr. Todd’s injury was caused or contributed to any negligence on the part of the Delta Steamboat Company. This assignment of error is without merit.
Delta’s seventh and eighth assignments of error address the district court’s award of $120,000.00 in general damages to Mr. Todd. Delta contends that district court erred in awarding said amount and that the award is excessive.
The district court is vested with great discretion when awarding damages. Miller v. LAMMICO, 07-1352, p. 28 (La.1/16/08), 973 So.2d 693, 711. “An appellate court may disturb a damages award only after an articulated analysis of the facts discloses an abuse of discretion.” Id. “It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.” Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). Lastly, under the Jones Act, a plaintiff may recover all of his pecuniary losses (e.g., loss of earning capacity, medical expenses, and pain and suffering). Harrison, 2008 WL 708076, p. 17 (citing Cruz v. Hendy Int’l Co., 638 F.2d 719, 723 (5th Cir.1981) and Daigle v. L. & L Marine Transp. Co., 322 F.Supp.2d 717, 730 (E.D.La.2004)).
Furthermore, “when a defendant’s [negligence] aggravates or accelerates a plaintiffs pre-existing condition and disables a plaintiff, thus rendering him unable to continue his work, or said aggravation *116 awakens a dormant condition that causes a plaintiff to experience pain although he had suffered no pain from the condition 112prior to the aggravation, such defendant is liable in full for the disability and/or pain it caused.” Lopinto v. Crescent Marine Towing, 2004 WL 1737901, p. 5 (E.D.La.2004) (citing Milos v. Sea-Land Serv. Inc., 478 F.Supp. 1019, 1023 (S.D.N.Y.1979), aff'd 622 F.2d 574 (2nd Cir.1980), cert. denied, 449 U.S. 954, 101 S.Ct. 360, 66 L.Ed.2d 219 (1980)).
In the case sub judice, Mr. Todd fractured his knee. During his eight (8) month treatment period for his knee fracture, Mr. Todd received a series of Hyla-gen injections, participated in physical therapy and underwent knee surgery. Moreover, he was diagnosed as having a 15% permanent impairment of his right leg or a 6% whole body permanent impairment. Lastly, Mr. Todd continues to experience knee pain and is unable to work on his feet for an extended period of time.
Furthermore, the district court examined general damage awards for plaintiffs who sustained knee injuries similar to Mr. Todd. The district court examined the general damage awards for plaintiffs who sustained knee injuries in Courville v. Cardinal Wireline Specialists, Inc., 775 F.Supp. 929 (W.D.La.1991) and Richard v. St. Paul Fire and Marine Ins. Co., 942112 (La.App. 1 Cir. 6/23/95), 657 So.2d 1087. In Courville, a 29 year-old injured seaman who underwent two knee surgeries and who was forced to give up employment in heavy manual labor was awarded $175,000 in general damages. Courville, 775 F.Supp. at 938. In Richard, a plaintiff sustained a knee injury, underwent arthroscopic surgery and was no longer be capable of performing manual labor. Richard, 657 So.2d at 1092. The First Circuit affirmed the jury’s award of $125,000 in general damages in 113Richard. Id. The district courts general damages award in the instant case is consistent with the proceeding awards as well as other general damage awards made within our jurisdiction for lcnee injuries. We neither find that the district court abused its discretion in awarding Mr. Todd $120,000.00 nor do we find that such an award is excessive in light of the evidence and testimony presented to the district court. Thus, these assignments of error are without merit.
Delta’s final assignment of error is that the district court erred in not finding that Mr. Todd was guilty of some percentage of contributory or comparative negligence. As indicated above, the facts in this case were in dispute. Mr. Todd alleged that his knee was struck by a loaded cart after he cleared a passageway for Mr. Fant. Nevertheless, Delta avers that Mr. Todd hit his knee on the loaded cart when it was stationary.
As we stated in our discussion of the sixth assignment of erroi', where there are two permissible views of the evidence, the district court’s choice cannot be manifestly erroneous or clearly wrong.” Stobart, 617 So.2d at 882. We cannot say that the district court’s determination that Mr. Todd’s right knee was struck with the loaded cart to be manifestly erroneous. It follows then that we cannot say that the district court erred in not finding Mr. Todd contributorily or comparatively at fault, where the district court determined that Mr. Fant prematurely pushed the loaded cart through the kitchen before Mr. Todd had an opportunity to clear the constricted kitchen passageway. This assignment of error is without merit.
DECREE
For the foregoing reasons, the judgment of the district court is reversed with regard to its computation and calculation of *117 Mr. Todd’s past lost wages and the | ^matter is remanded to the district court for a new calculation and explanation. In all other respects, the judgment of the district court is affirmed.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

.The Court notes that Mr. Todd refers to himself as an appellant in his appellee's brief. As the record shows that only Delta filed a Motion for Appeal with the district court, we shall treat Mr. Todd solely as an appellee.

. Dr. Barry practices medicine in the state of Florida.

. Bipartite patella is a patella that has two fragments. The condition can also be referred to as a fracture, according to the testimony of Dr. Barry. Additionally, Dr. Barry *111 testified that Mr. Todd had abnormal lateral positioning of the patella, which means that his kneecap did not sit in the correct groove. Dr. Barry testified that Mr. Todd also suffered from chondromalacia of the patella and numbness in his right foot. Chondromalacia is the degeneration of the cartilage tissue in the knee.