SUSAN M. CHEHARDY, Judge.
| ¡.This appeal involves sixteen plaintiffs[1] who sued various defendants seeking recovery of damages for personal injuries allegedly suffered as a result of exposure *151 to naturally occurring radioactive material (“NORM”)[2] while cleaning pipe and tubing belonging to Exxon Mobil Corp. (Exxon Mobil) at the Intracoastal Tubular Services, Inc. (ITCO) pipe yard in Harvey, Louisiana. Plaintiffs and one defendant, Exxon Mobil, appeal the jury verdict, as well as other trial court rulings. For the reasons that follow, we affirm the trial court’s judgment in favor of plaintiffs and against defendant, Exxon Mobil.

|sFACTS AND PROCEDURAL HISTORY

The inception of the current litigation has a protracted history beginning on May 22, 2001 when the multi-million dollar verdict in Grefer v. Alpha Technical,[3] involving NORM contamination at the former ITCO pipe yard, was reported in the local press. The next day, May 23, 2001, the first lawsuit for personal injury damages caused by exposure to NORM at or near various pipe yards was filed by Leo Pollard, Jr. and others against several defendants, including Exxon Mobil and ITCO, in Civil District Court for the Parish of Orleans, bearing docket number 01-8707, Division D (“Pollard CDC”). Several similar lawsuits followed.
On May 10, 2002 In re: Harvey TERM,[4] a separate class action suit, bearing docket number 01-8708, Division D, in Civil District Court for the Parish of Orleans was filed. In response to the filing of the class *152 action suit, on December 20, 2002, five of the original Pollard CDC plaintiffs and Warren Lester, individually and on behalf of hundreds of other similarly situated plaintiffs, filed another lawsuit against Exxon Mobil, ITCO and others in Civil District Court for the Parish of Orleans bearing docket number 02-19657, (“Lester CDC”), for personal injury damages caused by exposure to NORM, and other hazardous, toxic and carcinogenic radioactive materials, including technologically enhanced radioactive material (“TERM”).[5]
As the litigation progressed without a determination of class status the Judge of Division D in Civil District Court for the Parish of Orleans determined that the individual plaintiffs would be tried in “flights” according to pipe yard location. On March 23, 2006, the Orleans Parish Judge maintained defendants’ exception of venue with respect to the flight of 24 plaintiffs whose sole source of exposure |4allegedly occurred at the ITCO pipe yard in Harvey, and transferred the instant case to the 24th Judicial District Court for Jefferson Parish. On January 11, 2010, sixteen of those plaintiffs, appellants herein, proceeded to trial against the only remaining defendants, Exxon Mobil and ITCO.
After 34 days of trial, the jury returned a verdict in favor of all sixteen plaintiffs solely against Exxon Mobil, and awarded damages to each plaintiff for increased risk of contracting cancer in amounts ranging from $10,000.00 to $175,000.00, with the award totaling $1,195,000.00. The jury did not find that plaintiffs were entitled to any additional damages for medical monitoring. The jury further determined that Exxon Mobil did not engage in wanton or reckless conduct in the storage, handling or transportation of hazardous or toxic substance and, thus, did not award punitive damages. The jury also found no fault on behalf of ITCO. This appeal follows.

LAW AND ANALYSIS

EXXON MOBIL’S APPEAL

Exxon Mobil assigns two issues for review by this Court: first, the trial court erred in denying its exception of prescription as to all sixteen plaintiffs and, second, the jury erred in awarding damages for increased risk of contracting cancer when plaintiffs have no present injury, no need for medical monitoring, and their right to sue for cancer, if they develop it in the future, was reserved.

Prescription

With respect to its first assignment of error, Exxon Mobil divides plaintiffs into three groups and contends that all 16 plaintiffs’ claims are prescribed. The three groups are: (1) the Pollard CDC plaintiffs,[6] who were named in the Pollard CDC litigation filed on May 23, 2001; (2) the non-Pollard CDC plaintiffs,[7] who first filed suit on December 20, 2002 in the Lester CDC petition; and (3) Ernesto Soto, who joined the litigation via an amended and supplemental petition filed on October 24, 2003.
As to the Pollard CDC plaintiffs, Exxon Mobil contends these five plaintiffs had constructive knowledge of their possible *153 exposure to NORM as early as 1987, which triggered the running of prescription years before they filed suit in May |s2001. Exxon Mobil contends that the doctrine of contra non valentem should not be invoked to extend the prescriptive period more than a decade to make these claims timely.
As to the ten non -Pollard CDC plaintiffs, Exxon Mobil asserts that prescription began to run once plaintiffs knew or should have known of their exposure to NORM, which the trial court determined was May 22, 2001, the date that the verdict in the Grefer lawsuit was reported in the media. Although Exxon Mobil disagrees with this factual determination by the trial court, it maintains that even under these facts, the claims of the non-Pollard CDC plaintiffs prescribed on May 23, 2002, seven months before they filed suit on December 20, 2002. Exxon Mobil further contends that the doctrine of contra non valentem would not apply to prevent the running of prescription as to the non -Pollard CDC plaintiffs because Exxon Mobil did nothing to prevent these plaintiffs from timely filing suit.
Exxon Mobil further contends that this Court’s decision in Lester v. Exxon Mobil Corp. (“Lester I ”),[8] makes it clear that the Pollard CDC suit filed on May 23, 2001 did not interrupt prescription for the Lester CDC plaintiffs because the Lester CDC plaintiffs, by express language in that petition opted out of the class action suit, In re: Harvey TERM.[9]
As to Mr. Soto, Exxon Mobil asserts the amending petition, filed on October 24, 2003, adding Mr. Soto as a plaintiff to Lester CDC, did not relate back to the filing of the original petition and, thus, for the same reasons applicable to the non-Pollard CDC plaintiffs, Mr. Soto’s claims are prescribed.
Prior to trial, Exxon Mobil filed an exception of prescription asserting that plaintiffs’ petition in Lester CDC was prescribed on its face. Exxon Mobil argued that plaintiffs alleged exposure to NORM while working at the ITCO pipe yard had occurred no later than 1992, almost a decade before plaintiffs filed suit in December of 2002. Exxon Mobil maintained that the doctrine of contra non valentem did not apply to prevent prescription from running, because all plaintiffs had constructive knowledge by the early 1990s, and five of the plaintiffs had actual knowledge in 1987 of their potential exposure to NORM. Exxon Mobil further maintained that it did nothing to prevent plaintiffs from timely filing suit.
In a peremptory exception of prescription, the mover bears the burden of proof. However, if the petition is prescribed on its face, the burden shifts to the | ^plaintiff to negate the presumption by establishing prescription has been suspended or interrupted. Taranto v. Louisiana Citizens Property Insurance Corp., 10-105 (La.3/15/11), 62 So.3d 721, 726. A trial court’s findings of fact on the issue of prescription are subject to the manifest error standard of review. Id.
At the three-day hearing on the exception of prescription, which concluded on November 18, 2009, plaintiffs presented testimony from four witnesses. The parties then agreed to forego further testimony, and submit the remaining issues to the trial judge via exhibits. On December 10, 2009, after reviewing 37 exhibits offered by *154 the plaintiffs and 106 exhibits offered by the defendants, the trial court rendered a judgment denying Exxon Mobil’s exception of prescription.
The trial court’s decision and extensive reasons for judgment indicated that Pollard CDC, the first petition filed on May 23, 2001, was prescribed on its face because the ITCO pipe yard, where all of the current plaintiffs admittedly suffered exposure to radioactive material, closed in 1992. The court then correctly determined that the burden shifted to plaintiffs to prove that the suits for personal injury damages filed almost a decade later were not prescribed.
The trial court’s initial determination was that Exxon Mobil had actively engaged in conduct that effectively prevented the Pollard CDC plaintiffs from availing themselves of their cause of action by misrepresenting to plaintiffs the risk of the harm to them associated with exposure from these classes of radioactive material. In applying the doctrine of contra non valentón, in accordance with Carter v. Haygood, 04-0646 (La.1/19/05), 892 So.2d 1261, 1267, the trial judge found that the actions of Exxon Mobil had interrupted prescription, and rendered the plaintiffs’ petition in Pollard CDC, filed May 23, 2001, timely. In its reasons for judgment, the trial court described the most telling indicator of Exxon Mobil’s continued attempts to conceal the risk of harm from exposure to radioactive NORM as alleged in Pollard CDC:
By far, the most revealing exhibit was EM 1, the video entitled Natural Occurring Low Level Radiation in Oil and Gas Production. It began with a man standing in a cluster of trees explaining that naturally occurring radiation is all around us. It comes from garden variety trees, the earth’s crust, the sun, artificial sources such as the T.V., X-rays, airline travel, watch dials. In short he explained low level radiation as an everyday part of our lives. He added that it is measured in milligrams and individuals receive a dose simply from living. He indicated that residents of Louisiana and Texas receive 40 milligrams per 17year simply from living, and the U.S. average is 100 milligrams per year.
He then stated that small amounts of NORM results from gas processing and deposits scale in tubing flow lines and inside piping. He described Exxon Mobil as revealing low levels in all cases, emitting less than 2 milligrams per hour. He estimated that tests were unlikely to reveal excessive doses or more than OHSA allowed.
He next suggested that some accidental exposure could happen and that ingesting a small amount would not cause harm. He speculated that it would be very unlikely for a worker to inhale or ingest a harmful amount.
Finally, he suggested wearing gloves, don’t eat, drink, smoke, or chew around suspected NORM. He concluded by saying that “the risk in our operators is very small but we will continue to monitor.” (Emphasis added).
The trial court then went on to conclude:
Given the low key nature of EM 1 it is small wonder that Mr. John Hooper, the owner of ITCO came away with the following impression after viewing the video:
Q. All right. So you were not — you were not concerned with external exposure to the material?
A. We were given to believe it was a natural phenomenon; it’s coming from the sun, the sheetrock, the wood paneling. We, ourselves, radiating out radia *155 tion, NORM, naturally occurring radiation.
The trial court also determined that the Lester CDC plaintiffs presented adequate evidence at the hearing that they did not learn of the cause of action for personal injuries that resulted from the risk of harm from NORM exposure until the Gre-fer jury verdict was reported on May 22, 2001.
After reviewing the trial judge’s extensive reasons for judgment, we find that the trial court did not commit manifest error in its findings of fact on the issue of prescription, or in applying the doctrine of contra non valentem, in holding that Exxon Mobil’s actions had interrupted prescription and rendered plaintiffs petition in Pollard CDC filed May 23, 2001, timely.
Next, the trial court addressed the timeliness of the Lester CDC suit as related to the filing of Pollard CDC. Exxon argued that, under the law, once the |soriginal Pollard CDC action was voluntarily dismissed by plaintiffs in December 2004, it was as if prescription had never been interrupted. The trial court, however, relying on Levy v. Stelly,[10] and former La. C.C. art. 3519,[11] held that the timely-filed Pollard CDC suit interrupted prescription for all Lester CDC plaintiffs so the Lester CDC petition filed on December 20, 2002 by the instant plaintiffs was not prescribed on its face.
In Levy, our brethren on the Fourth Circuit held:
[I]n the case where a second suit is filed prior to abandonment, voluntary dismissal or failure to prosecute the original demand, the interruption provided by the first suit is still viable at the time of the filing of the second suit, and the interruption remains viable after the dismissal because of the pendency of the second suit.
Levy, 277 So.2d at 196.
We find no error in the trial court’s reliance on Levy in determining that the instant Lester CDC petition was filed timely.
Additionally, Exxon Mobil contends that this Court’s previous opinion in Lester I, supra addresses the timeliness of the original Lester CDC petition. However, Exxon Mobil’s interpretation of Lester I is mistaken.
Lester I presented this Court with the question of prescription of claims as it related to a “Clarifying and Amending Petition” (hereinafter referred to as “Amending Petition”) filed on May 5, 2009, almost seven years after the original Lester CDC petition was filed. The Amending Petition sought to add a new cause of action for wrongful death and survivor benefits, and new classes of plaintiffs, surviving spouses and children (hereinafter the “New Plaintiffs”). In Lester I, the New Plaintiffs argued that the Amending Petition should enjoy the same interruption of prescription afforded the original Lester CDC petition, through the Pollard CDC suit, as in Levy, or in the alternative, that the Amending Petition should be allowed to “relate back” to the original Lester CDC petition in accordance with La. C.C.P. art. 1153.
In Lester I, the trial court granted Exxon Mobil’s exception of prescription, finding that the Amending Petition was, in fact, a supplemental petition. The trial court further held that Pollard CDC did not interrupt prescription for the Amending Petition because it had been dismissed on December 10, 2004, three years before *156 the Amending Petition was filed. The trial court, following Katz v. Allstate, 04-1133 (La.App. 4 Cir. 2/2/05), 917 So.2d 443, determined that the only suspension of prescription available for the New Plaintiffs in the Amending Petition were if they could have been considered putative class members in the pending class action suit, In re: Harvey TERM.
The trial court reasoned, and this Court agreed in Lester I, that the New Plaintiffs in the Amending Petition could not avail themselves of the suspension of prescription afforded putative class members under La. C.C.P. art. 596(3).[12] The petition in Lester CDC, the suit to which the New Plaintiffs sought to be added, had a specific provision to “opt-out” of the pending class action matter In re: Harvey TERM. That provision excluded them from availing themselves of the suspension of prescription allowed in class action matters in accordance with La. C.C.P. art. 596(3). The trial court also ruled, and this Court affirmed, that the Amending Petition could not relate back to Lester CDC under La. C.C.P. art. 1153 for reasons that are not pertinent to the instant case.
The case before us is distinguishable from Lester I, particularly when considering where on the timeline of this lengthy matter the original petition in Lester CDC falls.[13] The trial court made a factual finding that Pollard CDC was not prescribed under the doctrine of contra non valentem, despite the closure of the pipe yard where the exposure occurred almost a decade before the initial suit was filed in May of 2001. As explained previously in this opinion, Pollard CDC remained a viable cause of action on December 20, 2002, and acted to interrupt prescription for the plaintiffs in the original Lester CDC suit in accordance with Levy, supra. In Lester I, this Court determined, as did the trial court, that Pollard ImCDC could not interrupt prescription for the Amending Petition because it had been dismissed on December 10, 2004, three years before the Amending Petition in Lester I was filed.
With respect to Exxon Mobil’s assignment of error regarding prescription, *157 the final issue is whether Ernesto Soto’s amending petition filed on October 24, 2003 is prescribed. La. C.C.P. art. 1153 provides that, “When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original petition.” La. C.G.P. art. 1155 states, “The court, on motion of a party, upon reasonable notice and upon such terms as are just, may permit mover to file a supplemental petition or answer setting forth items of damage, causes of action or defenses which have become exi-gible since the date of filing the original petition or answer, and which are related to or connected with the causes of action or defenses asserted therein.”
New defendants and new plaintiffs may be added by supplemental and amended pleadings if the applicable criteria are met. In some instances, even new causes of action may be asserted in supplemental and amended pleadings. Gaines v. Bruscato, 30,340, (La.App. 2 Cir. 4/8/98); 712 So.2d 552, 557-558, writ denied, 98-1272 (La.6/26/98); 719 So.2d 1059.
In Giroir v. South Louisiana Medical Center, Div. of Hospitals, 475 So.2d 1040, 1044 (La.1985), the court held that:
an amendment adding or substituting a plaintiff should be allowed to relate back if (1) the amended claim arises out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) the defendant either knew or should have known of the existence and involvement of the new plaintiff; (3) the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated; (4) the defendant will not be prejudiced in preparing and conducting his defense.
The action filed by Mr. Soto arose from the same conduct, transaction, or occurrence by Exxon Mobil as set forth in the original pleading in both Pollard CDC and Lester CDC. Further, the defendants knew of or should have known of the existence of Mr. Soto and other workers like him. Additionally, Mr. Soto’s amending petition was filed only 10 months after the original petition in Lester CDC, and prior to the time that Pollard CDC was dismissed, distinguishing this filing from the amended petition in Lester I.
_J_yFor the reasons stated above, we find no error in the trial court’s denial of Exxon Mobil’s exception of prescription. The trial court determined that no proof was offered that any plaintiff from Pollard CDC or Lester CDC became aware of the existence of their cause of action for injuries sustained from exposure to NORM or TERM until the Grefer verdict was reported on May 22, 2001. As a result of that finding, the timely filing of the Pollard CDC suit on May 23, 2001 interrupted prescription for all the plaintiffs in Lester CDC filed on December 20, 2002, and the supplemental petition filed by Mr. Soto on October 24, 2003.

Damages

In its next assignment of error, Exxon Mobil, relying on Bonnette v. Cono-co, Inc.,[14] argues that the jury erred in awarding damages for “increased risk of cancer” where plaintiffs have no present injury.
Here, sixteen plaintiffs proceeded to trial against Exxon Mobil seeking damages for fear of cancer, increased risk of developing cancer, and medical monitoring because of their exposure to NORM. Seven of those sixteen plaintiffs also had claims *158 for punitive damages against Exxon Mobil for exposure to NORM, under La. C.C. art. 2315.3.[15]
On February 18, 2010, the trial judge granted Exxon Mobil’s motion for directed verdict regarding punitive damages for plaintiffs’ fear of cancer claims. As a consequence, plaintiffs’ “fear of cancer” claims were not presented to the jury. On March 5, 2010, after two weeks of deliberations, the jury awarded damages to all sixteen plaintiffs for their “increased risk of cancer” as a result of their exposure to NORM by Exxon Mobil.
The jury’s determination of the amount, if any, of an award of damages is a finding of fact. Ryan v. Zurich Am. Ins. Co., 07-2312 (La.7/1/08), 988 So.2d 214, 219. Our law provides that, “[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury.” La. C.C. art. 2324.1.
It is well-settled that a reviewing court may not disturb the factual findings of the trier of fact in the absence of manifest error. Rosell v. ESCO, 549 So.2d [12840, 844 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1979). In Arcen-eaux, the supreme court set forth a two-part test for the appellate review of facts: (1) the appellate court must find from the record that there is a reasonable factual basis for the finding of the trial court, and (2) the appellate court must further determine that the record establishes the finding is not clearly wrong or manifestly erroneous. Arceneaux, 365 So.2d at 1333; see also Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
If the trial court’s findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Consequently, when there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 883 (La.1993); Sistler, 558 So.2d at 1112.
Here, each plaintiff testified to a fear of contracting cancer in the future as a result of his exposure to NORM for a period of years. Recently, in Arabie v. Citgo Petroleum Corp.,[16] the Louisiana Supreme Court affirmed the lower court’s award for future injury relying on Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974). “While to a scientist in his ivory tower the possibility of cancerous growth may be so minimal as to be untrou-bling, we are not prepared to hold that the trier of fact erred in finding compensable this real possibility to th[ese] worrying workmen.” Id. (quoting Anderson, 304 So.2d at 353). We agree. The jury did not err in awarding plaintiffs’ damages for increased risk of future injury. On that basis, the jury’s award is affirmed.

*159
PLAINTIFFS’ APPEAL

Plaintiffs present three assignments of error on appeal. Each of those assignments of error challenge the award of damages: first, the district court erred in failing to award punitive damages; second, the district court erred in failing to award damages for medical monitoring; and third, the district court erred in awarding general damages that are abusively low.
Additionally, although not listed as assignments of error, plaintiffs also challenge, in their brief, numerous evidentiary rulings and the denial of their Batson/'Ed-monson claim.
1 ^Damages
In their first assignment of error, plaintiffs contend that the district court erred in failing to award punitive damages. We disagree. Former La. C.C. art. 2315.3, effective September 3, 1984 and repealed April 16, 1996, provided for punitive damages “if it [were] proved that plaintiff’s injuries were caused by the defendant’s wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances.”
Here, the trial court granted defendant’s directed verdict on the issue of punitive damages with respect to seven plaintiffs’ increased risk of cancer claim. Here, although plaintiffs do have an increased risk of cancer because of Exxon Mobil’s ae-tions, plaintiffs did not prove actual injury as required by former La. C.C. art. 2315.3. There was no error in the trial court’s grant of defendant’s motion for directed verdict on plaintiffs’ claim for punitive damages.
In their second assignment of error, plaintiffs argue that the district court erred in fading to award damages for medical monitoring.[17] Special damages are those which generally refer to specific expenses which may be quantified arising out of the consequences of the defendant’s behavior. Coxe Property Management and Leasing v. Woods, 09-1729 p. 4 (La.App. 4 Cir. 8/11/10), 46 So.3d 258, 260. The standard of review for special damages was set forth by the Louisiana Supreme Court in Kaiser v. Hardin, 06-2092 (La.4/11/07), 953 So.2d 802, 810:
Special damages are those which have a “ready market value,” such that the amount of the damages theoretically may be determined with relative certainty, including medical expenses and lost wages. McGee v. A C and S, Inc., 05-1036 (La.7/10/06), 933 So.2d 770. In reviewing a jury’s factual conclusions with regard to special damages, an appellate court must satisfy a two-step process based on the record as a whole: There must be no reasonable factual basis for the trial court’s conclusions, and the finding must be clearly wrong. Guillory *160 v. Ins. Co. of North America, 96-1084 (La.4/8/97), 692 So.2d 1029.
| MHere, plaintiffs failed to prove that there was no reasonable basis for the jury’s award or that its finding was clearly wrong. We will not disturb the jury’s finding on appeal.
In their third assignment of error, plaintiffs argue that the district court’s general damages award was abusively low. We disagree.
The discretion vested in the trier of fact is great and even vast, such that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 628 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
Although plaintiffs argue that the jury’s award of general damages was low considering the wealth of the defendant, from our review of the record, it is obvious that the jury concluded that the plaintiffs deserved compensation for their risk of developing cancer for each year that each plaintiff was exposed to radioactive waste by Exxon Mobil. We will not disturb the jury’s award of damages.

Other challenges

Additionally, although not listed as assignments of error, plaintiffs also argue, in brief, that the trial judge erred in numerous evidentiary rulings and the denial of their Batson/Edmonson claim. In an abundance of caution, we address those arguments here.

Evidentiary rulings

Plaintiffs contend that the trial court made numerous erroneous rulings excluding evidence of Exxon Mobil’s reprehensibility, expert medical and scientific testimony, and deposition testimony from John Hooper, CEO of co-defendant ITCO.
La. C.E. art. 103(A) deems that an error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected. Thus, the proper inquiry for determining whether a party was prejudiced by a court’s alleged erroneous ruling is whether the alleged error, when compared to the entire record, had a substantial effect on the outcome of the case. Arabie Bros. Trucking Co. v. Gautreaux, 03-0120, p. 13 (La.App. 1 Cir. 8/4/04), 880 So.2d 932, 942. The party alleging prejudice by the evidentiary ruling of the court bears the burden of so proving. Emery v. Owens-Corp., 00-2144, p. 7 (La.App. 1 Cir. 11/9/01), 813 So.2d 441, 449.
Here, plaintiffs fail to provide support that the alleged error had a substantial effect on the outcome of this case. Their argument lacks merit.

Batson/Edmondson challenge

Plaintiffs allege that the trial judge erred in denying its claim that Exxon Mobil systematically struck minority jurors from the jury that heard this trial in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). Plaintiffs specifically contend that Exxon Mobil, with discriminatory intent, struck four African-American potential jurors — Anton Batiste, Elise Jones, Christopher Hayes-Bougere, and Edna Leboyd — from the jury that tried this case.
*161 A private litigant in a civil case may not use peremptory challenges to exclude jurors on the account of race. To do so is a violation of the Equal Protection Clause. Richard v. St Paul Fire and Marine Ins. Co., 94-2112 (La.App. 1 Cir. 6/23/95), 657 So.2d 1087 (citing Edmonson v. Leesville Concrete Company, Inc., supra). First, the challenging party must make a prima facie showing that the opposing party exercised a peremptory challenge on the basis of race. The burden then shifts to the opposing party to articulate a race-neutral explanation for striking the jurors in question, which is related to the case to be tried. Batson, 476 U.S. at 96-98, 106 S.Ct. at 1723-1724. This second step of the process does not demand an explanation that is persuasive, or even plausible. Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995).
In the final step of the analysis, the trial court must determine whether the party raising the Batson/Edmonson challenge has carried his burden of proving purposeful discrimination. At this stage, the trial court must consider the persuasiveness of the explanations. It is at this stage that implausible or fantastic justifications may be found to be pretexts for purposeful discrimination. Purkett, 514 U.S. at [768], 115 S.Ct. at 1771.
In this case, voir dire of the jury panels took place over four days. On the second day of voir dire, after the trial judge denied its challenge of prospective | ifijuror Elise Jones for cause, Exxon Mobil used a peremptory challenge to strike Ms. Jones. Plaintiffs’ counsel objected stating:
She is an African American, and that is the second African-American being struck for preemptory[sic] challenge. I’m preserving that for the record. There is now only one other black person in our jury. Jefferson Parish certainly has a 20, 30, to 40 percent base of African-Americans. I think they are being selective at this point.
After a short aside, the trial judge responded, “[Y]ou have to pass the threshold first and then you have to do more — get beyond doing two challenges on an African-American. I realize there’s not that many on the jury venire at this time, but note that’s a challenge at this time.” Here, the trial judge apparently did not find that plaintiffs made a sufficient prima facie showing that the defense had challenged Ms. Jones on the basis of her race.
The next day, after the trial judge denied its challenge of prospective juror Christopher Hayes-Bougere for cause, Exxon Mobil used a peremptory challenge to strike Mr. Hayes-Bougere. Plaintiffs’ counsel did not object at that time so any challenge was waived. See, Nunnery v. City of Kenner, 08-1298 (La.App. 5 Cir. 5/12/09), 17 So.3d 411, 415; La. C.C.P. art. 1635.[18]
On the final day of voir dire, Exxon Mobil used its final peremptory challenge to strike prospective juror Ms. Edna Le-boyd. Plaintiffs again objected on the basis that Exxon Mobil exhibited discriminatory intent by its pattern of striking minorities, specifically four African-Americans, from the jury.
In response, defense counsel stated that Exxon Mobil peremptorily challenged Mr. Batiste only after its challenge for cause *162 was denied. Defense counsel stated Exxon Mobil challenged Mr. Batiste on the basis that he “specifically stated that he could not be impartial” about the harmful effects of radiation, not because of his race.
Next, with respect to Ms. Jones, defense counsel stated that he was not aware that Ms. Jones was African-American when he back-struck her. Defense counsel stated Exxon Mobil challenged Ms. Jones for cause because she was biased against the chemical company because she stated that there exists “no safe level of exposure.” However, defense counsel stated that once the trial court denied Exxon Mobil’s cause challenge of Ms. Jones, they used a peremptory |17challenge to remove her from the jury, not because of her race but because of her bias.
Plaintiffs’ counsel stated that Exxon Mobil “said [Ms. Leboyd] did admit to bias.” After listening to both parties regarding Batson/Edmonson challenge, the trial judge found that counsel for Exxon Mobil “gave legitimate reasons why you did each one race neutral” and denied plaintiffs’ Batson/Edmonson challenge.
A reviewing court owes the district judge’s evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous. Purkett, supra (citing Hernandez v. New York, 500 U.S. 352, 364, 111 S.Ct. 1859, 1868-69, 114 L.Ed.2d 395 (1991)). Our review of the voir dire transcript reveals that Exxon Mobil presented plausible, if not persuasive, reasons for using its peremptory challenges against the challenged prospective jurors. We find no merit in plaintiffs’ argument.

CONCLUSION

For the foregoing reasons, we find no error in the trial court’s denial of Exxon Mobil’s exception of prescription with respect to the claims of these sixteen plaintiffs. Moreover, we find that the damages awarded by the jury did not constitute an abuse of discretion, and, therefore, decline to disturb the jury’s award.
In all respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed solely against Exxon Mobil.

AFFIRMED

JOHNSON, J., dissents with reasons.

. The sixteen plaintiffs are John A. Booth, Jr.; Richard Meerman, Sr.; Vi Nguyen; John M. Oleszkowicz; Leo Pollard, Jr.; Clarence D. Ross; Jack Roy; Tanner Darrensburg, Sr.; John T. Hendrix, Jr.; Bruce Ingram; Jeffery G. Lang; Leo Mediamolle, Jr.; David L. Perry; Raymond C. Schaffer; Cedric D. Watts, Sr.; and Ernesto A. Soto.

. At the site in question, the radioactive scale removed from the pipes consists of radium— 226, radium — 228, and their daughter products. To the extent that radium is found on sites such as this one, it is naturally occurring and may be technologically enhanced. It is sometimes referred to as Technologically Enhanced Naturally Occurring Radioactive Material ("TENORM”), which is defined as "natural sources of radiation which would not normally appear without some technological activity not expressly designed to produce radiation.” See, Grefer v. Alpha Technical, 02-1237 (La.App. 4 Cir. 3/31/05), 901 So.2d 1117, 1128, writ denied, 05-1590 (La.3/31/06), 925 So.2d 1248 and writ denied, 05-1259 (La.3/31/06), 925 So.2d 1248 and cert. granted, judgment vacated sub nom., Exxon Mobil Corp. v. Grefer, 549 U.S. 1249, 127 S.Ct. 1371, 167 L.Ed.2d 156 (2007).

. See Grefer v. Alpha Technical, 02-1237 (La.App. 4 Cir. 3/31/05), 901 So.2d 1117, jdgmt vacated by Exxon Mobil Corp. v. Grefer, 549 U.S. 1249, 127 S.Ct. 1371, 167 L.Ed.2d 156 (2007), on remand, 02-1237 (La.App. 4 Cir. 8/8/07), 965 So.2d 511, writ denied, 07-1800 (La. 11/16/07), 967 So.2d 523, cert. denied, 553 U.S. 1014, 128 S.Ct. 2054, 170 L.Ed.2d 810 (2008). The plaintiffs in the Grefer lawsuit filed suit as landowners in August 1997 against Exxon Mobil and ITCO to recover damages for the contamination of a 33-acre tract of land with radioactive material. This land was where ITCO operated its pipeyard where plaintiffs in the present case worked. After a five-week trial, the jury returned a verdict in favor of the Grefers and awarded them damages in the amount of $56,145,000.00, which included $145,000.00 in general damages and $56,000,000.00 in restoration costs, as well as punitive damages in the amount of one billion dollars. The award was initially affirmed by the Fourth Circuit, but later vacated by the United States Supreme Court. On remand, the Fourth Circuit amended the award to reduce the $1 billion award for punitive damages to $112,290,000.00

. In re: Harvey TERM litigation, 04-0005 (La.App. 4 Cir. 4/7/04), 872 So.2d 1214, writ denied, 04-1211 (La.6/25/04), 876 So.2d 846 includes, In re: Harvey TERM, No. 01-8708 and consolidated cases: Leo Pollard, Jr., et al. v. Alpha Technical Services, Inc., et al., No. 01-8707; Glenda Bailey, et al. v. Exxon Mobil Corporation, et al., No. 01-8926; James A. Williams, et al. v. Exxon Mobil Corporation, et al., No. 01-8959; Odile Gordon, et al. v. Exxon Mobil Corporation, et al., No, 01-14101; Jo Ann B. Grigsby, et al. v. Joseph Grefer, et al., No. 01-16364; Willie Williams, et al. v. Exxon Mobil Corporation, et al., No. 01-18230; Ida Rose Wilson, et al. v. Exxon Mobil Corporation, et al., No. 01-19533; John H. Cotton, et al. v. Exxon Mobil Corporation, et al., No. 01-19938; and Phil Burras, et al. v. Exxon Mobil corporation, et al., No. 02-644.

. See, Bailey ex rel. Brown v. Exxon Mobil Corp., 11-0177 (La.App. 4 Cir. 8/31/11), 76 So.3d 53, 54, writ denied, 11-2131 (La. 11/18/11), 75 So.3d 468.

. The Pollard CDC plaintiffs include Leo Pollard, Jr., Jack Roy, Clarence Ross, Richard Meerman, and John Hendrix.

.The non -Pollard CDC plaintiffs include John A. Booth, Jr.; Vi Nguyen; John M. Oleszkow-icz; Tanner Darrensburg, Sr.; Bruce Ingram; Jeffery G. Lang; Leo Mediamolle, Jr.; David L. Perry; Raymond C. Schaffer; and, Cedric D. Watts, Sr.

. 09-1105 (La.App. 5 Cir. 6/29/10), 42 So.3d 1071, writ denied, 10-2244 (La. 12/17/10), 51 So.3d 14.

. The class action suit. In re: Harvey TERM, was filed after Pollard CDC but before Lester CDC.

. 277 So.2d 194 (La.App. 4th Cir.1973), writ denied, 279 So.2d 203 (La.1973).

. Acts 1982, No. 187, § 1, repealed C.C. art. 3519 and reenacted its substance as La. C.C. art. 3463.

. La. C.C.P. art. 596 provides: Liberative prescription on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class is suspended on the filing of the petition as to all members of the class as defined or described therein. Prescription which has been suspended as provided herein, begins to run again:
(1) As to any person electing to be excluded from the class, from the submission of that person’s election form;
(2) As to any person excluded from the class pursuant to Article 592, thirty days after mailing or other delivery or publication of a notice to such person that the class has been restricted or otherwise redefined so
as to exclude him; or
(3) As to all members, thirty days after mailing or other delivery or publication of a notice to the class that the action has been dismissed, that the demand for class relief has been stricken pursuant to Article 592, or that the court has denied a motion to certify the class or has vacated a previous order certifying the class.

. The critical distinction between the petition in Lester CDC and the Amended Petition in Lester I is, when the Amending Petition was filed, Pollard CDC was no longer a viable cause of action and could not act to interrupt prescription for these plaintiffs. Lester CDC, likewise, could not interrupt prescription because, without Pollard CDC, it was filed after the original tolling of prescription on May 23, 2002. Therefore, the only suit available to interrupt or suspend prescription for the plaintiffs in the Amended Petition would have been In re Harvey TERM. However, in Lester CDC, as analyzed in light of the holding in Katz, supra, the plaintiffs specifically opted-out of any class action so the Amending Petition did not enjoy the suspension of prescription afforded to putative class members under La. C.C.P. art. 596(3).

. 01-2767 (La. 1/28/03), 837 So.2d 1219, 1230-31.

. Effective July 9, 1999, Acts 1999, No. 989, the Louisiana Legislature amended La. C.C. art. 2315 to provide that "[d]amages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease." Thus, the amendment effectively eliminated medical monitoring as a compensable item of damage in the absence of a manifest physical or mental injury or disease. The provisions of the Act were made "applicable to all claims existing or actions pending on its effective date and all claims arising or actions filed on and after its effective date.” Bonnette v. Conoco, Inc., supra.

. 10-2605 (La.3/13/12), — So.3d —, reh'g denied, 89 So.3d 307.

. In Bourgeois v. A.P. Green Ind., Inc., 97-3188 (La.7/8/98), 716 So.2d 355, 358 n. 12, the Louisiana Supreme Court noted that
[A] claim for recovery of medical monitoring expenses is separate and distinct from a claim for the enhanced risk of contracting a serious illness due to exposure. The enhanced risk claim seeks a damage award, not because of any expenditure of funds, but because a plaintiff contends that the unquantified injury to his or her health and life expectancy should be presently compen-sable, even though no evidence of disease is manifest. While this type of claim is inherently speculative, forcing courts to anticipate the probability of future illness or disease, a medical monitoring claim is much less so, the only issue for the factfinder being whether or not the plaintiff needs medical surveillance given the circumstances of his or her exposure. The risk of speculation in a medical monitoring claim is further reduced because recovery is based upon the specific dollar costs of reasonable and necessary periodic examinations. (Citations omitted).

. La. C.C.P. art. 1635 reads, in pertinent part:
For all purposes it is sufficient that a party, at the time the ruling ... of the court is made ..., makes known to the court ... his objection to the action of the court and his grounds therefore; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him.